UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JHENNEL FYFFE,<br>    *Plaintiff*,<br><br>v.<br><br>LENNY OGANDO, et al,<br>    *Defendants*. | )<br>)<br>)<br>)<br>)<br>)   3:23-CV-359 (OAW)<br>)<br>)<br>)<br>)<br>)<br>) |

### ORDER GRANTING IN PART MOTION TO DISMISS

**THIS ACTION** is before the court upon Defendants' Motion to Dismiss ("MTD"), ECF No. 20, and Motion for More Definite Statement ("MMDS," and together with the MTD, "Motions"), ECF No. 21. The court has reviewed` the Motions, Plaintiff's opposition briefs, *see* ECF Nos. 25 and 28, Defendants' reply briefs, *see* ECF Nos. 31 and 32, and the record in this matter, and is thoroughly advised in the premises. After careful review, the MTD hereby is **GRANTED in part** and **DENIED in part**; and the MMDS is **DENIED.**

### I.    BACKGROUND[1]

Plaintiff, a black woman of West Indian ancestry, has been employed by the Department of Correction ("DOC") since October 2015. In 2016 or 2017, a coworker attempted to force her to sleep with him, which Plaintiff reported to Defendant Ogando (Mr. Ogando was then a captain, but has since risen to the position of deputy warden).

---

[1] All factual assertions are drawn from the complaint, ECF No. 1, and are taken as true for the purpose of this ruling.

1

Plaintiff asserts that ever since then, she has experienced constant harassment in retaliation for that report.

Much of this harassment apparently was perpetrated by other officers,[2] whom Plaintiff alleges started rumors about her, interfered with her work, and even locked the lavatories such that she could not relieve herself during her shift. She allegedly had to provide a doctor's note to her supervisors stating that she needed to use the restroom at least three times per day. A white officer accused Plaintiff of being hostile toward him, but that accusation was found to be baseless. The accusing officer's godfather, though, directed Plaintiff to distribute razors to certain inmates (a violation of DOC policy), and when Plaintiff refused, he issued her a written reprimand. Another officer once sang sexually explicit songs over the intercom while Plaintiff was touring an all-male unit (causing her increased danger), and yet another openly threatened her, telling her she was not wanted and that he would put her in a body bag. Plaintiff reported the threats to a lieutenant, but no discipline was dispensed and no other action was taken.

In 2019, Plaintiff began receiving prank calls from white officers, which she reported to DOC's Affirmative Action Office, but no action was taken and the alleged harassment continued. Because of that complaint, Plaintiff's coworkers spread rumors that she did not like white officers such that some white officers refused to work with her.

In August of 2020, a white supervisor wrote up Plaintiff for an infraction she did not commit. Sometime thereafter, Plaintiff was assigned to a unit with a mentally disturbed inmate who was told by other officers that Plaintiff was prejudiced against white people, which Plaintiff contends was an attempt to persuade this inmate to assault her.

---

[2] None of the other officers, except Defendant Ogando, are named as defendants in this action.

In 2020 and 2021, officers locked her in the "port," and in 2021 she was locked out of roll call by a lieutenant, who directed other officers to assert in writing Plaintiff simply was late (though her tardiness was disproven by video footage). Plaintiff reported this harassment to her union representatives, after which she was not granted any training opportunities, which has prevented her from earning promotions or transfers. More specifically, she has been hindered from rising in the ranks to lieutenant, and she asserts that although she has applied to over forty DOC positions, she has not been offered any of them. One in particular went to a Hispanic man with less than a year's experience compared to Plaintiff's five years of experience.

In March 2022, Defendant Ogando issued Plaintiff a written warning for allegedly misusing family medical leave. He also revised her most recent evaluation, which had reflected a satisfactory performance, to state that her performance was unsatisfactory. Plaintiff again enlisted her union to reverse both actions.

At some point, Plaintiff filed grievances with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued right-to-sue letters in December 2022 and February 2023. Plaintiff timely filed the instant action, asserting four claims.[3] As to DOC, she alleges violations of Title VII of the Civil Rights Act of 1964 under theories of disparate impact and hostile work environment (Count One), and retaliation (Count Two); and violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 (Count Four). As to Defendant Ogando, she alleges employment discrimination in violation of 18 U.S.C. §§ 1981 and 1983[4] (Count Three),

---

[3] The complaint itself does not specify which claims are asserted against which defendant, but the object of each claim has been clarified through motion practice.
[4] Section 1981 protects individuals' right to contract, but violations of Section 1981 by state actors are actionable via Section 1983. *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018) ("[W]e

3

## II. **LEGAL STANDARD**

When reviewing a motion to dismiss, the court must accept as true the complaint's asserted facts and draw all reasonable inferences in the nonmovant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. **DISCUSSION**

Defendants originally argued for dismissal of all claims against DOC due to improper service of process and because any claims against Defendant Ogando were improperly stated. As to the former argument, it appears that Plaintiff engaged a state marshal to effect service, in accordance with relevant law, *see* Fed. R. Civ. P. 4(e)(1) (incorporating Conn. Gen. Stat. §§ 52-64(a) and 52-50(a)), but the marshal was away and, not realizing state law required service by a marshal, his sister (a business partner) served process. Plaintiff has since cured this error, and DOC does not address this cure in its reply brief. It also appears that DOC has been participating in discovery. Accordingly, the court finds that effective service has been made and Defendants' objection thereto has been abandoned. Consequently, this is a partial MTD, as

---

conclude that 42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981.").

Defendants only argue that Counts Three and Four fail to state a claim. Alternatively, the MMDS asks the court to order Plaintiff to clarify her pleading.

### A. MTD

Defendants argue Counts Three and Four must be dismissed due to insufficient alleged facts to support a Section 1983 claim against Defendant Ogando, and because the Eleventh Amendment prevents a CFEPA claim from being brought against DOC. Plaintiff counters that there are adequate facts alleged to carry her claim against Defendant Ogando, and that sovereign immunity is inapplicable to her CFEPA claim.

#### 1. *Count Three: Section 1983*

The Equal Protection Clause protects public employees from discrimination at the workplace. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir.2006). "[P]ublic employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[F]or a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Id.* at 88. It is undisputed that Defendant Ogando is acting under color of state law when he operates within his DOC employment. But Plaintiff still must satisfy each element of a prima facie case under Title VII. She must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d

5

Cir.2000)).   Moreover, it is well-settled that violative conduct must be alleged against each defendant individually; supervisors are not vicariously liable for their subordinates' conduct.  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (holding that "there is no special rule for supervisory liability," but rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Iqbal*, 556 U.S. at 676).

Plaintiff has satisfied the first three elements of the prima facie case: she is a member of several protected classes, she clearly is qualified for her position given her continued employment there, and she did suffer an adverse employment action at the hands of Defendant Ogando when he allegedly wrote her up without cause and falsified her performance evaluation.  But the court cannot find that the circumstances of that action give rise to an inference of discrimination.  The complaint alleges several details indicating that other members of the correctional staff acted out of discrimination, but not Defendant Ogando.  The only other mention of Defendant Ogando is the allegation that Plaintiff reported sexual harassment to him in 2016 or 2017, five years before the poor performance review.  No reasonable factfinder could infer discriminatory animus based upon this single allegation. While the temporal proximity of an adverse action to protected activity can support an inference of discriminatory animus, a span of five years cannot qualify as "proximity."  *See, e.g., Howard v. City of New York*, 602 F. App'x 545, 549 (2d Cir. 2015) (finding a space of ten months insufficiently proximate to show animus); *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49 (2d Cir. 2018) ("Temporal proximity alone is generally insufficient after about three months.");

6

*Figueroa v. Weisenfreund*, 255 F. App'x 595, 597 (2d Cir. 2007) (finding fifteen months too long a period to show temporal proximity).

Accordingly, the court dismisses Count Three for failure to state a claim.

### 2. *Count Four: CFEPA*

The parties agree the Eleventh Amendment generally bars CFEPA claims against DOC, but Plaintiff argues that because Count Four seeks injunctive relief, it satisfies sovereign immunity's narrow exception pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

Plaintiff's argument is flawed. She admits Count Four is brought only against DOC, but *Ex Parte Young* only applies to claims brought against individuals. *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988) (noting that *Ex Parte Young* only applies to claims against individual defendants). Moreover, the doctrine only applies to ongoing violations of *federal* law. *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("To the extent Plaintiffs seek prospective relief against Defendants in their official capacity for violations of . . . "state law," those claims are indeed barred by the Eleventh Amendment under the *Pennhurst* doctrine.") (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89 (1984)). Accordingly, limiting the relief sought under Count Four to equitable remedies still cannot save it from dismissal.

For these reasons, Count Four also must be dismissed.

Although Plaintiff does not seek leave to amend the complaint, the court finds it in the interest of justice to permit her another opportunity to state these dismissed claims. Within this circuit, it generally is accepted that a plaintiff should be given at least one opportunity to amend their pleading where there exists a possibility that any defects might be cured, and where there is no prejudice to the defendants. *Meyer v. Seidel*, 89 F.4th

7

117, 140 (2d Cir. 2023) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.") (quoting *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991)).  Defendants have not argued against amendment, and it does not appear that amendment would be futile, thus the court will follow the general practice in this circuit, and hereby allows Plaintiff one opportunity to amend the dismissed claims.

### B. MMDS

In the MMDS, Defendants identify several alleged deficiencies in the complaint: (1) Count One includes two distinct claims (hostile work environment and disparate treatment), which should be split into two separate counts, (2)  the allegations of earlier counts are incorporated into each subsequent count, and (3), the complaint fails to specify when much of the alleged conduct occurred.[5]  They seek an order under Federal Rule of Civil Procedure 12(e) instructing Plaintiff to correct these deficiencies.

Rule 12(e) provides that a party may move for clarification of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response."  "[T]he aim of Rule 12(e) is to remedy unintelligible pleadings, not to correct for lack of detail." *Pullen v. NorthStar Presidio Mgmt. Co., LLC*, No. 3:98 CV 771 (WWE)DW, 1998 WL 696010, at *1 (D. Conn. Sept. 11, 1998).  The court finds that the complaint satisfies the Rule 8 pleading requirements.  It is a short and plain statement of the grounds for relief, and it was coherent enough for Defendants to draft their MTD and participate in discovery. *Zuppe v. Elite Recovery Servs., Inc.*, No. 3:05CV857 (JBA), 2006 WL 47688, at *1 (D. Conn. Jan. 5, 2006) (noting that motions for a more definite statement generally are

---

[5] Defendants also objected that the counts did not specify which claims were asserted against which defendants, but as noted supra, this deficiency has been addressed through motion practice.

8

disfavored and that "[t]he preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings.") (quoting *In re: MTBE Prod. Liability Litig.*, 233 F.R.D. 133, 2005 WL 1123888 at *1 (S.D.N.Y. May 11, 2005)).  Accordingly, the MMDS is denied, but the court encourages Plaintiff to be mindful of these deficiencies if she amends the complaint.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, ECF No. 20, is **DENIED in part** and **GRANTED in part.**
    a. The MTD is granted with respect to Count Three and Count Four.
        i. The Clerk of Court respectfully is asked to please terminate Defendant Lenny Ogando from this action.
        ii. Plaintiff may amend the complaint on or before **January 8, 2025.**
    b. The Motion is denied with respect to Count One and Count Two.
2. Defendants' Motion for a More Definite Statement, ECF No. 21, is **DENIED.**
3. Any dispositive motions shall be filed on or before **March 8, 2025.**
4. The parties' joint trial memorandum shall be filed on or before **March 8, 2025,** if no dispositive motions are filed, or within the period set by the court upon its disposition of any dispositive motions that are filed
5. The parties should be ready to proceed to jury selection on **May 15, 2025.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 10th day of December, 2024.

_/s/_
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE
