**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JHENNEL FYFFE,<br>*Plaintiff*,<br><br>v.<br><br>LENNY OGANDO, et al,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:23-CV-359 (OAW) |

## ORDER GRANTING IN PART MOTION TO DISMISS

**THIS ACTION** is before the court upon Defendants' Motion to Dismiss the Second Amended Compliant ("MTD"). *See* ECF No. 74. The court has reviewed the Motion, Plaintiff's opposition, *see* ECF No. 85, Defendants' reply, *see* ECF No. 86, and the record in this matter, and is thoroughly advised in the premises. After careful review, the MTD hereby is **GRANTED in part and is DENIED in part.**

## I. BACKGROUND

The court already has recounted the relevant facts exhaustively in a separate ruling and so will not do so again here. *See generally* ECF No. 56. Generally, though, Plaintiff, a black woman of West Indian ancestry, has been employed by the Department of Correction ("DOC") since October 2015. She alleges that Defendants have discriminated against her on the basis of her sex, race, ethnicity, and national origin. She filed grievances with the Equal Employment Opportunity Commission ("EEOC"), and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), both of which have released jurisdiction. She timely filed her complaint and amended it twice, ECF Nos. 1, 57 and 71, after the court granted in part two motions to dismiss, ECF Nos. 56 and 64.

In all of her three complaints, Plaintiff has alleged three claims, but never has she clearly stated against which Defendant each claim is brought. Through briefing of the several motions to dismiss, though, it is clear that Counts One and Two, which allege violations of Title VII of the Civil Rights Act of 1964 under theories of disparate impact and hostile work environment, and retaliation, respectively, are brought against DOC;[1] Count Three, which alleges employment discrimination in violation of 18 U.S.C. §§ 1981 and 1983,[2] is brought against Defendant Ogando; and Count Four, which alleges a violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, initially was brought against DOC, but in both amended complaints it is asserted against Defendant Ogando.

Defendants again move to dismiss Counts Three and Four.

## II. <u>LEGAL STANDARD</u>

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the complaint's asserted facts and draw all reasonable inferences in the nonmovant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To withstand a motion to dismiss filed pursuant

[1] Counts One and Two, as asserted against DOC, have not been the subject of any of the motions to dismiss.

[2] Section 1981 protects individuals' right to contract, but violations of Section 1981 by state actors are actionable via Section 1983. *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018) ("[W]e conclude that 42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981."). The court therefore treats Count Three as a Section 1983 claim.

to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists." *Makarova*, 201 F.3d at 113. When considering a motion to dismiss under Rule 12(b)(1), the court takes as true the factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

## III. DISCUSSION

Defendants again argue that both Counts Three and Four are unsupported by Plaintiff's alleged facts. They further argue that Count Four must be dismissed because Plaintiff's newly-stated legal theories never were presented to the CHRO (such that the court lacks subject matter jurisdiction), and because Defendant Ogando is immune from suit under the CFEPA.[3]

[3] Defendants characterize this immunity as both qualified and statutory. Qualified immunity is a defense against federal claims, though, and therefore is inapplicable as to the CFEPA. Thus, the court treats this as a statutory immunity defense. *See generally Stanley v. Barone,* 210 Conn. App. 239, 246 (2022) (discussing qualified immunity as to federal claims, and statutory immunity as to state-law claims).

### 1. ***Count Three: Section 1983***

The Equal Protection Clause protects public employees from discrimination at the workplace. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). "[P]ublic employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 87 (2d Cir. 2015). "[F]or a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Id.* at 88. It is undisputed that Defendant Ogando is acting under color of state law when he operates within his DOC employment. But Plaintiff still must satisfy each element of a prima facie case under Title VII. She must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). Moreover, it is well-settled that violative conduct must be alleged against each defendant individually; supervisors are not vicariously liable for their subordinates' conduct. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (holding that "there is no special rule for supervisory liability," but rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Iqbal*, 556 U.S. at 676).

The court already found that Plaintiff has satisfied the first three elements of the prima facie case: she is a member of several protected classes, she clearly is qualified

for her position given her continued employment at DOC, and she did suffer adverse employment actions. Specifically, Plaintiff alleges that in March 2022, Defendant Ogando disciplined her without cause and falsified her performance evaluation. But the court previously determined that Plaintiff had failed to show circumstances giving rise to an inference of discrimination, since Plaintiff's prior complaints only described the misconduct of other members of the correctional staff, not Defendant Ogando.

Plaintiff now argues that she has corrected this deficiency by asserting the following: (1) that although Defendant Ogando said she would train under certain supervisors, in April 2018, he ultimately assigned her to train with an individual who Ogando knew previously had made sexually explicit remarks and gestures to Plaintiff, and furthermore that Defendant Ogando declined to address continued harassing behavior by this individual, even going so far as to direct Plaintiff (at a time unknown) to withdraw an official report she had submitted to a female lieutenant about her treatment despite being a mandatory reporter himself (which direction Plaintiff declined to follow),[4] (2) that beginning in August 2016,[5] Defendant Ogando denied Plaintiff training and preferred assignments, instead giving such opportunities to officers who are not members of Plaintiff's protected classes, even when they were less experienced than Plaintiff, (3) that in August 2021, he refused to address repeated security breaches that placed Plaintiff in danger from a particularly violent inmate,[6] and (4) that Defendant Ogando

[4] Plaintiff also asserts that no investigation ever was done into this report, but it is not clear whether Defendant Ogando specifically ought to have conducted the investigation.

[5] Plaintiff alleges instances in September 2020 when Defendant Ogando denied Plaintiff position in the prison laundry because a male candidate was "a better fit," and in August 2021, when an "Escort" position was given to a Hispanic officer with less experience. She also alleges that at another unspecified time, Defendant Ogando granted weapons training to another, less-experienced Hispanic officer.

[6] Specifically, Plaintiff alleges that staff permitted the inmate to use a facility phone to call Plaintiff and make explicit sexual commentary to her.

would give Plaintiff instructions that conflicted with those he gave to her immediate supervisors, such as in April 2021, when he purported to assign Plaintiff away from one facility building for her safety, but then did not put her on the work roster for the other facility building. In sum, Plaintiff alleges that Defendant Ogando used his managerial position to single her out for uniquely unpleasant employment conditions on account of her protected characteristics.

The court finds that these allegations are sufficient to carry the Section 1983 claim against Defendant Ogando past dismissal. The court previously found that the five years between Plaintiff's complaint of sexual harassment and Defendant Ogando's poor review of her performance to be too temporally distant to support a reasonable inference of discriminatory animus. The additional allegations of intervening misconduct adequately address that deficiency. A reasonable factfinder could infer discrimination on the basis of sex from the fact that Plaintiff had complained of sexual harassment in 2016 or 2017; that despite knowing of the harassment, Defendant Ogando told Plaintiff to withdraw any reports of the same and, in 2018, assigned her to train under the accused harasser; that in September 2020, he passed her over for a particular assignment in favor of a male officer; and that in 2021 he refused to take action to correct repeated security breaches through which a violent inmate also was permitted to sexually harass Plaintiff. Similarly, the court finds that a reasonable factfinder could infer discrimination on the basis of race, ethnicity, or national origin from the fact that Defendant repeatedly gave preferred assignments and trainings to Hispanic officers, even if they were less senior than Plaintiff.

The court also finds that these additional allegations sufficiently rebut Defendants' argument that many of these allegations are barred by the statute of limitations. "Since

Congress did not enact a statute of limitations governing actions brought under § 1983, [federal] courts must borrow a state statute of limitations." *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). "The general three-year personal-injury statute of limitations period set forth in Connecticut General Statutes § 52–577 has been uniformly found to be the appropriate one for federal civil rights actions." *Pinkston v. Connecticut*, No. CIV.A.309CV633(JCH), 2009 WL 2852907, at *2 (D. Conn. Sept. 2, 2009). Accordingly, because Plaintiff filed this action on March 22, 2023, the statute of limitations generally would bar any claim arising from conduct that occurred before March 22, 2020.

The continuing course of conduct doctrine, however, holds that "[w]hen [a] wrong sued upon consists of a continuing course of conduct, the statute [of limitations] does not begin to run until that course of conduct is completed." *Slainte Invs. Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 258 (D. Conn. 2015) (quoting *Giulietti v. Giulietti*, 65 Conn.App. 813, 833, 784 A.2d 905 (Conn.App.2001)) (alterations in original). "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015). It is designed to address those cases where "it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct" because "[t]he injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events." *Gibson v. Metropolis of CT LLC*, No. 19-CV-00544 (KAD), 2020 WL 956981, at *6 (D. Conn. Feb. 27, 2020) (quoting *Watts v. Chittenden*, 301 Conn. 575, 587–88, 22 A.3d 1214 (2011)) (alterations in original).

The court agrees with Plaintiff that the instances of misconduct alleged may fairly be deemed a continuous course of conduct. Defendants themselves argue that a single incident of being passed over for an assignment or a training would be insufficient to carry a civil rights claim, and at this stage in litigation, the court finds that Plaintiff has alleged enough to show a consistent pattern of delinquent supervision by Defendant Ogando.

This also is not a case where Plaintiff relies upon a theory of vicarious liability as to Defendant Ogando. To the contrary, she alleges that Defendant Ogando's own actions (or inaction) has directly caused her continued injury at her workplace insofar as he has denied her trainings and preferred assignments, and despite knowing of circumstances rendering Plaintiff unsafe in her work, he personally has failed to take corrective measures. Thus, the court finds that Plaintiff adequately states an equal protection claim against Defendant Ogando himself.

Accordingly, the court denies the Motion as to Count Three.

### 2. ***Count Four: CFEPA***

As to Count Four, the court begins with Defendants' jurisdictional argument. This argument contends that Plaintiff failed to exhaust any CFEPA claim against Defendant Ogando, and as such, that the court lacks subject matter jurisdiction over any such claim.

Before bringing a CFEPA claim in court, Connecticut law requires a plaintiff to file a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and receive a release of jurisdiction. *Baerga v. City of Hartford*, No. 3:22-CV-811 (SVN), 2022 WL 16856097, at *3 (D. Conn. Nov. 10, 2022). This is a jurisdictional requirement. *See Sullivan v. Bd. of Police Comm'rs of City of Waterbury*, 196 Conn. 208, 217–18 (1985) (stating that a plaintiff's "failure . . . to bring his complaint to the CHRO

forecloses his access to judicial relief, because it deprive[s] the trial court of jurisdiction to hear his complaint.").

The court notes that the grievance Plaintiff sent to the CHRO is not part of the record, and so the court may not review it directly. But Plaintiff does not deny that she did not name Defendant Ogando as a respondent therein. Rather, she contends that in the complaints she submitted *to the EEOC,* she referenced Defendant Ogando's failure to provide her with training opportunities. She argues that this is sufficient to exhaust her CFEPA claim as to him.

The court disagrees. Filing a complaint with the EEOC does not exhaust a CFEPA claim. *Edwards v. William Raveis Real Est., Inc.,* No. CIV.A. 08-CV-1907JCH, 2009 WL 1407233, at *3 (D. Conn. May 19, 2009) (collecting cases in which judges in this district "have held on the facts before them that a filing with the EEOC does not preserve a claim with the CHRO."). Thus, Plaintiff's argument fails to show that she has exhausted her CFEPA claim, which is her burden under Rule 12(b)(1).

As a result, Count Four must be dismissed for lack of subject matter jurisdiction. And, as the court already has given Plaintiff several opportunities to amend her complaint, no additional opportunities will be granted.

## IV. <u>CONCLUSION</u>

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, ECF No. 74, is **<u>DENIED in part</u>** and is **<u>GRANTED in part</u>.**
    a. The MTD is granted with respect to Count Four.

b. The Motion is denied with respect to Count Three.[7]

2. The parties are reminded that they may resume settlement discussions with the Honorable United States Magistrate Judge S. Dave Vatti at any time by contacting His Honor's chambers directly.

3. The parties also remain free to consent to the jurisdiction of United States Magistrate Judge Maria E. Garcia to preside over this matter in its entirety, including as to any **jury** or non-jury trial. The United States Magistrate Judges have a genuine interest in presiding over trials, and they are often able to try civil cases sooner than would a district judge, partly because Magistrate Judges do not incur the risk of a felony criminal trial (subject to Speedy Trial Act provisions) delaying the start of a civil trial. Beyond that, the knowledge, experience, and diligent case management of our USMJs also can result in the fair and timely resolution of cases long before trial. *See, e.g.,* https://www.ctd.uscourts.gov/sites/default/files/District.Connecticut.Brochure.Consents.rev.2.20.24-final.pdf; Magistrate Judge Consent Form, available at: https://www.ctd.uscourts.gov/forms/magistrate-judge-consent-form.

4. Absent the parties' consent to USMJ jurisdiction in this matter, the following deadlines shall govern:

    a. Any dispositive motions shall be filed on or before **December 8, 2026.**

    b. The joint trial memorandum shall be filed on or before **December 8, 2026,** if no dispositive motions are filed, or within the period set by the court upon its disposition of any dispositive motions which are filed.

[7] The court reiterates that Counts One and Two already have survived dismissal. *See* ECF No. 56.

c. The parties should be prepared to proceed to trial on **January 21, 2027.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 21st day of September, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE